| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1.   To: (Name and Title of Officer) | 2.   Date:  8/1/23 |
| 3.   By: (Print Inmate Name and Number)<br><br>_____<br><br>_____<br>Inmate Signature | 4.   Counselor's Name: AUG 2 2023<br><br>5.   Unit Manager's Name: |
| 6.   Work Assignment: | 7.   Housing Assignment: |

8.   Subject: State your request completely but briefly. Give details.

DEAR CLERK,

Please File This Civil Action Complaint on My behalf.
Can you please send me a copy of Filed Civil Complaint
along with any other documents I may need.
Thank you, I will greatly appreciate your help.

Shawn Williams - KP2337
Shawn Williams

9. Response: (This Section for Staff Response Only)

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

STAFF MEMBER NAME _____   _____ DATE _____

Print                                    Signature

*7.2.1, Counseling Services Procedures Manual - Section 3, Request Slips*          *Attachment 3-A*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHAWN WILLIAMS,                            :
          Plaintiff,          :                    CIVIL ACTION
    v.                                   :
                                 :
JAIME SORBER,                              :
Former Superintendent of SCI-Phoenix,      :
                                 :
JOHN E. WETZEL,                            :
Former Secretary of the Pennsylvania       :
Department of Corrections,                 :
                                 :
GEORGE M. LITTLE,                          :
Former Secretary of the Pennslyvania       :
Department of Corrections,                 :
          Defendants,         :

## PLAINTIFF'S COMPLAINT WITH JURY DEMAND

  Plaintiff Shawn Williams, acting pro se, complains of defendents Jaime Sorber, John Wetzel, and George Little (collectively, "Defendents"), as follows:

## Nature of Action , Parties And Jurisdiction

  1. This is a Section 1983 civil rights action, pursuant to 42 U.S.C. §1983, Plaintiff Shawn Williams was wrongfully transferred to the quarantine housing (segregated confinement) unit from general population on or about August 1, 2021 at SCI-Phoenix maximum security prison. Mr. Williams did not have covid 19, he was tested for covid 19 on or about July 29, 2021 and the test results came back negative. Mr. Williams was confined in the quarantine housing unit from aprrox. August 1, 2021 to April 1, 2022. The confinement of Mr. Williams in the quarantine segregated housing unit, despite the absence of a positive covid 19 test, constitutes a violation of his constitutional right to due process and his right against cruel and unusual punishment. Mr. Williams seeks compensation for his wrongful confinement in the segregated housing unit, denial of access to the SCI-Phoenix law library (which got him time barred), violation of his due process rights, equal protection rights, first amendment rights, rights againts cruel and unusual punishment and declaratory and injunctive relief under 42 U.S.C.  1983.

2. Plaintiff Shawn Williams is an adult individual, currently incarcerated at SCI-Phoenix Maximum Security Prison.

3. Defendant Jaime Sorber is, upon information and belief, an adult individual, who is the former Superintendent of SCI-Phoenix Prison, 1200 Mokychic Drive, Collegeville PA 19426. He is sued in his individual capacity.

1

4. Defendant John E. Wetzel is upon information and belief, an adult individual, he is the former Secretary of the Pennsylvania Department of Corrections. He is sued in his individual capacity.

5. Defendant George M. Little is upon information and belief, an adult individual, he is the former Secretary of the Pennsylvania Department of Corrections. He is sued in his individual capacity.

6. Pursuant to 28 U.S.C § 1331, this Court has original jurisdiction over the subject matter of this case because all or part of the claims are based upon 42 U.S.C § 1983 and/or the United States Constitution.

7. This Court has supplemental jurisdiction over the subjuect matter of any claims asserted herein that arise under state law pursuant to 28 U.S.C. § 1367(a) and the doctrines of pendent and ancillary jurisdiction, because any state law claims stated herein arise from a common nucleus of operative giving rise to the federal claims alleged in this case.

8. Venue is properly laid in the Eastern District of Pennsylvania under 28 U.S.C § 1391(b) because defendants either reside or can be found in this district, and because a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

9. In the year of 2020 SCI-Phoenix went into a lock down from approximately March 30, 2020 to April 1, 2022 due to the COVID-19 pandemic.

10. In June or July of 2021 the Johnson and Johnson (J&J) vaccine was made available to the prisoners at Phoenix, and Defendant Sorber encouraged his prisoners to get the J&J vaccine.

11. Defendant Sorber informed the prisoners the lock down will only be lifted if the prison achieve herd immunity.

12. The prison achieved herd immunity. Over 80% of the prisoners received the J&J vaccine.

13. Plaintiff is not anti vaccine, but he declined to be vaccinated due to his religious beliefs.

14. Vaccinated or not all prisoners and staff were required to wear their mask at all times.

15. All meals are brought to the housing units throughout the prison.

16. In the prison's general population there is a rotation system for some prisoners to eat their meals in their cell while the other tier eats in the dayroom. In the quarantine segregated housing unit all prisoners had to eat in their cells.

17. On or about July 29, 2021 Defendant Sorber informed the inmates at Phoenix that three vaccinated prisoners had tested positve for Covid-19.

18. Phoenix had approximately 3,000 inmates.

19. Phoenix have approximately 16 housing units.

20. On July 29, 2021 Mr. Williams was housed on D-A Unit cell 1020.

21. On or about August 1, 2021 while being transferred to the segregated housing unit, ̌was told by Deputy Sipple that a large number of the staff at Phoenix were unvaccinated including herself. _Plaintiff_

22. When it was declared a COVID-19 pandemic in America the Defendants gave every prisoner two mask and instructions on what to do to avoid catching COVID-19.

23. All prisoner were ordered to wear their mask at all times when out of their cells.

24. On or about July 29, 2021 under the direction of Defendant Sorber, D-Unit Unit Manger Mr. Luquis and D-unit Counselor Mr. B (Barnett) came to Mr. Williams cell and informed Mr. Williams that he would have to be tested for COVID-19 and quarantined in his cell; and if he refused to be COVID-19 tested he would be sent to the Restricted Housing Unit (RHU) or he would be moved off DA-Unit and put into an extreme enhanced quarantine isolation.

25. Only unvaccinated inmates like Mr. Williams were being quarantined and threatened with extreme quarantine isolation if they refused to be COVID-19 tested.

26. Mr. Williams did not want to be COVID-19 tested, but did so under duress to avoid being moved off the housing unit and put into extreme quarantine isolation.

27. On or about July 29, 2021 Mr. Williams took the COVID-19 test; on or about July 31, 2021 the test results came back negative, however on or about August 1, 2021 Mr. Williams was transferred to RA-Unit cell 1019 which was the quarantine segregated housing unit for unvaccinated prisoners.

28. For the first month or two in the segregated housing unit Mr. Williams was only allowed out of his cell for 15 minutes a day to use the phone, shower and/or kiosk. When Mr. Williams cohort went to 4 cells out at a time he was allowed out of his cell approximately 30-45 minutes a day.

29. While in quarantine Mr. Williams was not allowed access to the law library/regular library, religious services, vocational programs, legal visits, contact visits, or anything else off the housing unit.

30. On or about August 1 through August 5, 2021, to punish and retaliate against Mr.Williams and the other unvaccinated prisoners for refusing to accept the J&J vaccine, the Defendants locked the prison down to remove all the unvaccinated prisoners from general population at Phoenix to the segregated confinement unit indefinitely.

31. R-Unit was a general population housing unit at Phoenix that Defendant Sorber converted into a quarantine housing unit for unvaccinated prisoners.

32. R-Unit has two separate sections, A and B. Each section have 72 cells, 36 down the bottom and 36 up top, but A section have 70 beds and B have 68.

33. Mr. Williams was not allowed to go outside.

34. It did not take long for the Defendants plan to work, after being put into this segregated confinement many of the unvaccinated prisoners will was broken and after one or two days they were begging to be vaccinated and returned to general populaton.

35. On or about August 18, 2021 Defendant Sorber had R-Unit locked down and brought dozens of guards and other staff on the unit. Prisoners were forced out of their cells allowed only to wear T-shirt, underwear and shower shoes. Mr. Williams and other inmates were made to stand in the middle of the dayroom for dogs to sniff them while guards tossed their cells. This was humiliating, embarrassing and inhumane.

36. On or about September 1, 2021 Mr.Williams and other prisoners were given two hours out of the cell twice a day and allowed to use the unit yard during one of those two hours.

37. On or about November 1, 2021 Mr. Williams was given a cellmate (Ray Slaughter) who said he tested positive for COVID-19 a few days prior to being transferred to SCI-Phoenix. Mr. Slaughter informed Mr. Williams that he was not retested when he arrived to Phoenix and housed with Mr. Williams. The Defendants knowingly endangered Mr. Williams life and showed negligence by housing Mr. Slaughter with Mr. Williams.

38. During Mr. Williams time in the quarantine segregated unvaccinated housing unit the Defendants were housing prisoners on the quarantine unvaccinated housing unit who were vaccinated, doing this caused COVID-19 breakouts on RA-Unit, which endangered Mr. Williams and all unvaccinated prisoners.

39. On or about December 3, 2021 Patrick Cooke, a prisoner on RA unvaccinated unit suppose to have tested positive for COVID-19.

40. The unit was put on lock down.

41. Defendant Sorber ordered a nurse to come on RA-Unit and go cell to cell to COVID-19 test the prisoners, do temperature/vital checks and oxygen levels; this took place twice a day.

42. Mr. Williams COVID-19 test came back negative.

43. None of the officers that came in contact with Mr. Cooke that morning were quarantined, they remained on the unit and moved freely through the prison.

44. Due to the COVID-19 breakout on RA-Unit Mr. Williams and the other prisoners were only let out of their cells for 15 minutes twice a day, but no yard or anything outside the unit.

45. On or about December 13, 2021 it was reported that prisoners in RB section tested positive for COVID-19

46. On December 17, 2021 Mr. Williams learned from Defendant Little that the J&J vaccine he refused to take that resulted in him being put into segregated confinement was immediately being discontinued and administered by PA DOC to its prisoners because it was causing medical complications such as blood clots, death etc.

47. Mr. Williams did not have COVID-19 nor did he ever test positive for COVID- 19, but remained in quarantine.

48. Mr. Williams had been confined in segregated confinement from on or about August 1, 2021 to April 1, 2022.

49. Mr. Williams segregated confinement was indefinite.

50. Because there was no positive COVID-19 test results, and no COVID-19 symptoms, Mr. Williams should not have been in quarantine segregated confinement.

51. Mr. Williams is and was healthy and remains in good health. Defendants had him in quarantine to punish him and make him suffer for exercising his right to refuse medical treatment.

52. Mr. Williams mental health was deteriorating from being in isolation so long.

53. Unvaccinated prisoners are held under very restrictive conditions, preventing virtually all communication between the general population and the outside world.

4

54. From December 3, 2021 to December 17, 2021 and January 19, 2022 to Febuary 2, 2022 RA-Unit was put on indefinite lockdown due to COVID 19 outbreaks. Mr.Williams had no access to cleaning supplies, clean (fresh) air, law library etc. and he was also denied access to see the psychologist when he requested. Mr. Williams was living in filth during the time of the indefinite lock down dates; eating, drinking, deficating, urinating and sleeping all in the same close quarters. Mr. Williams living conditions were inhumane.

55. Mr. Williams had been in quarantine segregated confinement in a cell about the size of a parking space for twenty two hours or twenty three hours 45 minutes a day 7 days a week.

56. Mr. Williams received all his meals in his cell.

57. The prolonged quarantine segregated confinement of Mr. Williams took a toll on his mental and physical well being.

58. Mr. Williams contact with the outside world was strictly limited.

57. Mr. Williams was only allowed to have four zoom visits. He was not permitted physical contact with any of his visitors under any circumstances.

58. Mr. Williams was not permitted to participate in any of the educational or religious programs offered to general population prisoners.

59. There was no library on the unit, Mr. Williams access to books and reading materials were strictly limited.

60. Prisoners on the unit are not allowed to pass reading materials or anything else to one another.

61. It is well documented that significant time spent in isolation causes adverse psychological affects that can be long lasting and debilitating.

62. Life for a prisoner in general population at Phoenix is extremely different than the quarantine segregated confinement to which Mr. Williams was subjected to. Some difference include inter alia: (a) prisoners in general population are permitted outside access everyday and yard from 8:15 am to 10:45 am and 1:15 pm to 3:15 pm and 6:15 pm to 8:15 pm and access to the large main yard every other day where they buy icecream, pies, etc.; (b) prisoners in general population have access to a gym and many hours of library time; (c) prisoners in population have access to their day room everyday from 1:15 pm to 3:45 pm and 6:15 pm to 8:45 pm, if there is no morning yard the prisoners get day room from 8:15 am to 10:45 am; (d) prisoners in general population can eat in the units day room with others if they choose to; (e) prisoners in general population have access to telephones from 8:15 am to 10:45 am and 1:15 pm to 3:45 pm and 6:15 pm to 8:45 pm; (f) prisoners in general population is permitted physical contact with visitors; (g) prisoners in general population are permitted to attend vocational classes, programs and religious services.

63. Defendants knew of , condoned, and willfully and maliciously agreed to subject plaintiff to the harsh conditions of quarintine segregated confinement despite the negative COVID-19 tests and for no penological interest.

64. Defendants have refused Mr. Williams requests to be put back into general population, allegedly because he refused the J&J vaccine medical treatment for COVID-19.

65. Mr. Williams was not a danger to others, furthermore, Mr. Williams was not ~~not~~ retained in quarantine for testing positive for COVID-19.

66. Defendants did not do anything to remedy their outrageous misconduct.

67. Mr. Williams was not allowed to be housed with vaccinated inmates, but numerous vaccinated inmates came on the quarantine unit almost everday with their work supervisors.

68. Security officers and k9 units are constantly on the unvaccinated unit tossing cells.

69. Everyday there are different guards vaccinated and unvaccinated to work the unit.

70. Mr. Williams had seen numerous staff members with their mask off while on the unit.

71. Defendants claimed R-Unit was only for unvaccinated prisoners, but two to three times a week prisoners off a bus were put on R-Unit who were vaccinated. Defendants policy stated new commits to a SCI had to quarantine for 14 days then the new commits would be transferred to their respective housing units. R-Unit was for the unvaccinated; it was not for quarantining new general population inmates.

72. There was no law in the Commonwealth of Pennsylvania that requires prisoners to receive a COVID-19 vaccination.

73. Vaccinated prisoners at Phoenix were not required to get a booster shot and they were allowed to remain in general population.

74. Mr. Williams quarantine segregated confinement was illegal, unjustifiable and cruel.

## CAUSES OF ACTION

### COUNT I

### Cruel and Unusual Punishment, under 42 U.S.C. § 1983

75. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully set forth herein.

76. At all times relevant hereto, Defendants were acting under color of law as agents of the Commonwealth, performing duties traditionally in the exclusive prerogative of the state.

77. Defendants offending conduct violated the rights, privileges and immunities guaranteed to Plaintiff under the Eighth Amendment.

78. Defendants acted pursuant to policy and/or custom of detaining unvaccinated prisoners in quarantine segregated confinement indefinitely for excercising their right to refuse the vaccine medical treatment for COVID-19.

79. The continued confinement of Mr. Williams in quarantine was unnecessary and a wanton infliction of pain.

80. The indefinite quarantine of a healthy Mr. Williams was unnecessary and a wanton infliction of pain.

81. The indefinite quarantine of Mr.Williams who did not have COVID-19 symptoms and his COVID-19 test results all came back negative was inhumane.

82. Upon information and belief, Defendants knew Mr. Williams was healthy and did not have COVID-19.

83. Defendants violated Mr. Williams Constitutional right against cruel and unusual punishment with wanton, outrageous, intentional and/or reckless disregard for the rights, health and well-being of Mr. Williams.

84. The quarantine of a healthy Mr. Williams and the force COVID-19 test caused Mr. Williams pain, injury and emotional distress.

85. Mr.Williams quarantine and COVID-19 tests that he was forced to take under duress constitutes a deliberate indifference to Mr. Williams psychological and physical health and is incompatible with society's evolving standards of decency.

86. The aforesaid conduct of Defendants entitles Mr. Williams to compensatory damages and cost of litigation, pursuant to 42 U.S.C. § 1983. State tort remedies do not provide and adequate means for redress. WHEREFORE, Plaintiff Shawn Williams, requests judgment in his favor and against Defendants Jaime Sorber, John E. Wetzel, and George M. Little for compensatory damages in excess of $35,000.00, plus punitive damages, costs of suit, and such other relief as this Court may deem just and proper.


## COUNT II

### Violation of Due process, under 42 U.S.C. § 1983

87. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

88. Mr. Williams detention in quarantine because he is unvaccinated and refused to give up his right to refuse a vaccine medical treatment for COVID-19 that the defendants were offering imposed atypical and significant hardship on Mr.Williams in relation to the ordinary incidents of prison life.

89. Mr. Williams had been placed in quarantine confinement indefinitely.

90. There was no legal process in place for which a healthy Mr. Williams may have sought transfer from quarantine to the general population.

91. While in quarantine, Mr. Williams had been deprived of most enviornmental and sensory stimuli, and of almost all human contact. Mr.Williams was not allowed to enjoy many of the privileges afforded to other prisoners in general population.

92. Defendants' actions are arbitary and conscience shocking.

WHEREFORE, Plaintiff Shawn Williams, request judgment in his favor and against defendants Jaime Sorber, John E. Wetzel, and George M. Little for compensatory damages in excess of $35,000.00, plus punitive damages, cost of suit, and such other relief as this Court may deem just and proper.

## COUNT III

### Violation of Equal Protection, under 42 U.S.C § 1983

93. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

94. Defendants offending conduct violated the rights, privileges and immunities guaranteed to Plaintiff under the Eighth Amendment.

95. Defendants treated Mr.Williams differently from other similarly situated, intentionally and without rational basis.

96. Mr.Williams was put into quarantine even though he had no COVID-19 symptoms and his test results came back negative.

WHEREFORE, Plaintiff Shawn Williams, request judgment in his favor and against Defendants Jaime Sorber, John E. Wetzel, and George M. Little for compensatory damages in excess of $35,000.00, plus punitive damages, costs of suit, and such other relief as this Court may deem just and proper.

## COUNT IV

### Violation of the First Amendment, under 42 U.S.C. § 1983

97. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

98. Defendants offending conduct violated the rights, privileges and immunities guaranteed to plaintiff under the First Amendment.

99. Mr. Williams exercised his right and religious beliefs/freedoms to refuse the J&J vacine medical treatment for COVID-19.

100. Defendants retaliated by putting Mr. Williams in quarantine segregated confinement indefinitely to punish him.

101. The aforesaid conduct of Defendants entitles Mr. Williams to compensatory damages, punitive damages and cost of litigation, pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Shawn Williams , request judgment in his favor and against Defendants Jaime Sorber, John E. Wetzel, and George M. Little for compensatory damages in excess of $35,000.00, plus punitive damages, costs of suit, and such other relief as this Court may deem just and proper.

## COUNT V

### Violation of Due Process, under 42 U.S.C. § 1983

102. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

103. Defendant Sorber's offending conduct violated the rights, privileges, and immunities guaranteed to Mr. Williams under the Due Clause of the U.S. Constitution when he denied Mr. Williams access to the law library and to his attorney Larry O'Connor which got Mr. Williams time barred; Mr. Williams was not able to properly prepare his brief for appeal for his legal case. WHEREFORE, Plaintiff Shawn Williams, requests judgment in his favor and against Jaime Sorber for compensatory damages in excess of $5,000.00 plus punitive damages, costs of suit, and

such other relief as this Court may deem just and proper.

COUNT VI

Declaratory Relief

104. Plaintiff incorporates the preceding paragraphs as if fully set forth herin.

105. Defendants punished Mr. Williams by holding him indefinitely in quarantine segregated confinement where he was kept locked in a cell for almost 24 hours a day 7 days a week because he exercised his right to refuse the J&J vaccine medical treatment the Defendants wanted him to take.

106. Defendants held prisoners indefinitely in quarantine, even if the prisoner's COVID-19 test results came back negative and had no COVID-19 symptoms.

107. Defendants refused to transfer Mr. Williams from segregated confinement to general population when he requested multiple times to be transferred to general population. Defendants continued their refusal even though Mr. Williams had no COVID-19 symptoms and all his COVID-19 test results were negative.

108. Unvaccinated prisoners, such as Mr. Williams, were held indefinitely in quarantine even when their COVID-19 test results came back negative. Such results imposed atypical and significant hardships on prisoners at Phoenix, its arbitrary, and conscience shocking, involves the unnecessary and wanton infliction of pain, were totally without penological justification, and resulted in grossly disproportionate punishments.

109. An actual controversy exists between the parties, in that Plaintiff submits Defendants' conduct was erroneous and unconstitutional.

110. Mr. Williams seeks a determination under 28 U.S.C. § 2201 that the Defendants conduct violates/violated the First, Eighth and Fourteenth Amendments and/or that the Defendants conduct were erroneous and unconstitutional.

WHEREFORE, Plaintiff Shawn Williams, request that the Court determine that the indefinite quarantine segregated confinement of healthy prisoners who were kept locked in their cells for almost 24 hours a day, 7 days a week for approximately nine months for exercising their right to refuse the J&J vaccine medical treatment was unconstitutional, and/or the Court determine that Defendants were required and should have transferred the prisoners who were not sick to general population.

Respectfully Submitted,

Shawn Williams-KQ2332
SCI-Phoenix
1200 Mokychic Dr.
Collegeville, PA 19426
August 1, 2023

9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVSNIA

SHAWN WILLIAMS,                                    :
          Plaintiff,                         :
   vs.                                          :
                                     :          CIVIL ACTION
JAMIE SORBER,                                      :
Former Superintendent of SCI Phoenix              :
JOHN E. WETZEL,                                    :
Former Secretary of the Pennsylvania              :
Department of Corrections,                         :
GEORGE M. LITTLE,                                  :
Former Secretary of the Pennsylvania              :
Department of Corrections,                         :
            Defendants.                        :

## VERIFICATION

I, Shawn Williams, hereby swear under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the information herein is true and correct to the best of my knowledge.

Defendant Jaime Sorber last known address, 1200 Mokychic Dr. Collegeville, PA. 19426.

Defendant John E. Wetzel last known address, Pennsylvania Department of Corrections 1920 Technology Parkway Mechanicsburg, PA. 17050.

Defendant George M. Little last known address, Pennsylvania Department of Corrections 1920 Technology Parkway Mechanicsburg, PA. 17050.

Executed on <u>August 1, 2023</u>

_Shawn Williams_
Shawn Williams KQ2332

Shawn Williams-KQ2332
SCI-Phoenix
1200 Mokychic Drive
Collegeville, PA. 19426

PA DEPARTMENT OF
CORRECTIONS
INMATE MAIL

neopost
07/31/2023
US POSTAGE $001.83

FIRST-CLASS MAIL

ZIP 19426
041M12252211



_Legal Mail:_

Office of The Clerk
United States District Court
Philadelphia, PA. 19106

U.S.M.S
X-RAY